## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

CARLOS ALARCON,

      Plaintiff,

v.

CORDOBA LEGAL GROUP LLC,

      Defendant.

Case No. 9:25-cv-80028

## **COMPLAINT**

Now comes CARLOS ALARCON ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CORDOBA LEGAL GROUP LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Nevada Credit Services Organizations Act ("NCSOA") under N.R.S. § 598.741 *et seq.*, the Nevada Uniform Debt Management Services Act ("NUDMSA") under N.R.S. § 676A.010 *et seq.*, as well as the Nevada Deceptive Trade Practices Act ("NDTPA") under N.R.S. § 598.005 *et seq.*, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

1

2.  This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within, and a substantial portion of the events or omissions giving rise to the claims occurred within, the Southern District of Florida.

### PARTIES

4.  Plaintiff is a consumer over 18 years of age residing in Henderson, Nevada.

5.  Defendant is a law firm, credit repair organization, and debt settlement provider that claims to assist consumers with their credit issues by offering their services in negotiating down the amount of debt owed so that consumers can address these debts and ultimately become debt free.  Defendant is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 102 NE 2nd Street, Unit 252, Boca Raton, Florida 33432.

6.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

7. In approximately April of 2024, Plaintiff was interested in attempting to resolve a number of debts which were impacting his credit, and subsequently began looking into various credit repair and debt settlement companies for assistance.

8. Plaintiff subsequently happened upon Defendant.

9. Plaintiff was informed that Defendant's services included reaching negotiated settlements with Plaintiff's creditors, which would allow Plaintiff to resolve these obligations by paying less than he would otherwise pay, in turn improving his credit history by assisting him in resolving his debts which would positively impact his debt-to-income ratio.

10. Defendant further represented that once Plaintiff agreed to work with Defendant, all of his creditors would stop calling and instead work with Defendant to resolve the debts.

11. Defendant further informed Plaintiff that although his credit score would be initially impacted by using Defendant's services, once Plaintiff successfully completed Defendant's program, Plaintiff's credit would improve as Defendant's program would result in him being debt free and resolving obligations that would otherwise remain unresolved and subject to further interest charges.

12. It was further represented that Plaintiff was hiring Defendant as an attorney and that Defendant would have legal advice readily available throughout the course of the parties' dealings.

13. Finding the nature of Defendant's represented services desirable, Plaintiff agreed to utilize Defendant's services, and entered into a contract for the provision of such services.

14. Plaintiff then began making his monthly payments which totaled approximately $300 each month.

15. Upon information and belief, Defendant charged Plaintiff for "legal" services that were unnecessary and were charged before Defendant fully completed any services that would have justified its retention of such fees.

16. After Plaintiff signed up for Defendant's program, he was told to completely cease speaking with or paying his creditors, and to instead divert those payments to Defendant for its services.

17. Defendant failed to adequately and completely explain this aspect of its services to Plaintiff when Plaintiff was considering whether to use Defendant's services, and further suggested that Plaintiff's monthly payments would go towards Defendant taking over the payments Plaintiff was making to his creditors.

18. Plaintiff persisted in making his payments to Defendant until the present

19. Notwithstanding Plaintiff maintaining his payments, Defendant subsequently failed to deliver the results or services in the manner represented.

20. Throughout the course of the parties' dealings, Plaintiff would persistently attempt to contact Defendant for information about the resolution efforts and Defendant's program.

21. Defendant persistently failed to respond to Plaintiff's communication attempts.

22. Upon information and belief, Defendant fails to staff adequate customer services representatives to provide its services in the manner represented while further misrepresenting the extent of attorney involvement in the services being provided.

23. Defendant further failed to take over payments to Plaintiff's creditors, instead allowing Plaintiff's obligations to go into default.

24. As a result, at least one of Plaintiff's obligations were sent to collections.

25. Plaintiff was not adequately nor completely apprised of this potential ramification of Defendant's services given Defendant's leading Plaintiff to believe his payments would be going to his creditors.

26. Upon information and belief, rather than payments going towards Plaintiff's creditors, the payments were being retained by Defendant for its services despite not performing or completely performing the services justifying its retention of the payments.

27. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

28. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant, further out of pocket expenses, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair and debt settlement organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

29. Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

30. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

31. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA § 1679b(a)

32. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

33. Defendant violated the above provisions of the CROA through its deceptive and misleading representations regarding the nature of its services and where exactly Plaintiff's payments would be going. Defendant represented and suggested that Plaintiff's monthly payments were going towards paying down all of his enrolled debts, only for Defendant to fail to apply Plaintiff's payments in the manner represented.

34. Defendant violated the CROA through its deceptive and misleading instruction that Plaintiff's best course of action would be to cease paying his creditors and instead divert those funds to Defendant. Defendant failed to completely and adequately explain this aspect of its services to Plaintiff and the potential ramifications thereof.

35. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it was

providing Plaintiff and/or could provide Plaintiff. Defendant represented that, so long as Plaintiff made his monthly payments to Defendant, Defendant would actively be working to resolve the enrolled debts, yet Defendant failed to do so and failed to work with Plaintiff's creditors in the manner represented.

36. Defendant further violated the CROA through its conduct in making certain representations regarding its services in order to get Plaintiff on the hook for services, only to cut against those representations through its contractual language.

37. Defendant further violated the above provisions of the CROA through its deceptive billing practices. Throughout the life of the parties' dealings, Defendant charged Plaintiff for various "legal" services that were not being provided or which were otherwise completely useless to Plaintiff. Defendant engages in this conduct so as to retain payments for "services" without actually providing the services regarding the retention of such fees. Defendant's conduct further cuts against its general representations that it does not charge for services before reaching settlements.

38. Defendant further violated the above provisions of the CROA through its deceptive representations regarding Plaintiff being able to speak with a customer service representative or attorney when needed. Defendant repeatedly touted the nature of its customer services and explicitly represented that Plaintiff would be able to contact attorneys for assistance with questions "24/7." Notwithstanding these

8

representations, Defendant routinely and completely failed to respond to Plaintiff's numerous communications and requests for information, all the while collecting his payments for services that were not actually being performed by Defendant.

**b.  Violations of CROA § 1679b(b)**

39. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

40. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Upon information and belief, Defendant charges consumers upfront fees before any services are performed, let alone fully performed.

**c.  Violation of CROA § 1679c**

41. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

42. Defendant violated 15 U.S.C. § 1679c through its failure to provide the written disclosures required under § 1679c.

### d. Violation of CROA § 1679d

43. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between consumers and credit repair organizations.

44. Defendant violated § 1679d through the nature of its noncompliant contract.

45. As a result of Defendant's deficient contract, the contract should be deemed void and unenforceable. 15 U.S.C. § 1679f(c).

### e. Violation of CROA § 1679f(b)

46. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

47. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded her under the CROA. Defendant's contract contains a number of provisions which improperly attempt to cause Plaintiff to waive the protections provided by the CROA.

48. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, CARLOS ALARCON, respectfully requests that the Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE NEVADA CREDIT SERVICE ORGANIZATIONS ACT

49. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

50. Plaintiff is a "Buyer" as defined by N.R.S. § 598.741.1.

51. Defendant is a credit services "Organization" as defined by N.R.S. § 598.741.5.

### a. Violations of NCSOA § 598.746

52. The NCSOA, pursuant to N.R.S. § 598.746.1, prohibits organizations from charging or receiving "any money or other valuable consideration before full and complete performance of the services the organization has agreed to perform for on or behalf of the buyer."

11

53.Defendant violated the above provision of the NCSOA through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant charged Plaintiff various monthly fees prior to the complete performance of the services justifying the retention of such fees.

54.The NCSOA, pursuant to N.R.S. §§ 598.746.4-5, prohibits organizations from engaging in fraudulent, deceptive, and unfair conduct or otherwise using untrue or misleading representations in the offer or sale of the services.

55.Defendant violated the above provision of the NCSOA through its deceptive and misleading conduct, as stated above.

WHEREFORE, Plaintiff, CARLOS ALARCON, respectfully requests that this Court enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiff actual damages pursuant to N.R.S. § 598.777;

c.  Awarding Plaintiff punitive damages pursuant to N.R.S. § 598.777;

d.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to N.R.S. § 598.777; and,

e.  Awarding any other relief the Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE NEVADA UNIFORM DEBT MANAGEMENT SERVICES ACT

56. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

57. Defendant is a "provider" of "debt management services" and "debt settlement services" as defined by N.R.S. § 676A.

### a. Violations of N.R.S. § 676A.500

58. The NUDMSA, pursuant to N.R.S. § 676A.500, imposes a requirement of good faith upon providers of debt management services.

59. Defendant violated the above provision of the NUDMSA through its failure to approach its dealings with Plaintiff in good faith.

### b. Violations of N.R.S. § 676A.510

60. The NUDMSA, pursuant to N.R.S. § 676A.510, requires providers to "maintain a toll-free communication system, staffed at a level that reasonably permits an individual to speak to a certified counselor, certified debt specialist or customer service representative, as appropriate, during ordinary business hours."

61. Defendant violated the above provision of the NUDMSA through its failure to maintain a line staffed at reasonably sufficient levels to work with its customers. Plaintiff made a number of attempts to reach Defendant but had none of his calls or efforts answered or responded to.

### c. Violation of N.R.S. § 676A.520

62. The NUDMSA, pursuant to N.R.S. § 676A.520, outlines a number of prerequisites which providers must meet prior to working with consumers.

63. Defendant violated the above through its failure to engage in the necessary prerequisites prior to signing Clamant up for services.

### d. Violations of N.R.S. § 676A.580

64. The NUDMSA, pursuant to N.R.S. § 676A.580, outlines the nature of fees that can properly be charged by providers.

65. Defendant violated the above provisions of the NUDMSA through its charging of fees for various "services" in excess of the amount allowed under Nevada law.

### e. Violations of N.R.S. § 676A.700

66. The NUDMSA, pursuant to N.R.S. § 676A.700 outlines a number of prohibited practices on the part of providers.

67. Pursuant to § 676A.700.1(p), a provider cannot "[e]mploy an unfair, unconscionable, or deceptive act or practice, including, without limitation, the knowing omission of any material information."

68. Defendant violated the above provision of the NUDMSA through the deceptive, misleading, and unfair conduct engaged in, as discussed further above.

WHEREFORE, Plaintiff, CARLOS ALARCON, respectfully requests that the Court enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiff actual damages pursuant to N.R.S. § 676A.760;

c.  Awarding Plaintiff punitive damages pursuant to N.R.S. § 676A.760;

d.  Enjoin Defendant from further violations of law pursuant to N.R.S. § 676A.760;,

e.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to N.R.S. § 676A.760; and,

f.  Awarding any other relief the Court deems just and appropriate.

## COUNT IV – VIOLATIONS OF THE NDTPA

69. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

70. Defendants are "person[s]" as contemplated by the NDTPA.

71. At all relevant times Defendants' conduct directed towards Plaintiff was "in the course of his or her business" as contemplated by the NDTPA.

### a.  Violations of NDTPA § 598.0915

72. Pursuant to NDTPA § 598.0915, a "person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she" engages in a list of specifically prohibited conduct.

73. Such conduct includes: knowingly false representations as to source, sponsorship, approval, or certification of goods or services for sale or lease;

knowingly false representations as to affiliation, connection, association with or certification by another person; knowingly false representations as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; representing that goods or services are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, qualify, grade, style, or model; advertises goods or services with intent not to sell or lease them as advertised; or knowingly makes any other false representation in a transaction.

74. Defendants violated the above provisions of the NDTPA through their deceptive and unfair conduct discussed above.

WHEREFORE, Plaintiff, CARLOS ALARCON, respectfully requests that this Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant N.R.S. § 41.600(3)(a);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations pursuant to N.R.S. § 41.600(3)(b);

d. Awarding Plaintiff costs and reasonable attorney fees, pursuant N.R.S. § 41.600(3)(c);

e. Enjoining Defendant from further violations of law pursuant to N.R.S. § 41.600(3)(b); and,

f. Awarding any other relief as this Court deems just and appropriate.

Dated: January 8, 2025                      Respectfully submitted,

s/ Alexander J. Taylor (Lead
Attorney)
Alexander J. Taylor
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
ataylor@sulaimanlaw.com